Sharon SUSIE, Plaintiff,

v.

**APPLE TREE PRESCHOOL AND CHILD CARE CENTER, INC.,**
Defendant.

No. C93–4081.

United States District Court,
N.D. Iowa,
Western Division.

Oct. 17, 1994.

ment options presented to her by her employer in an attempt to accommodate her disability. The letter was allegedly in violation of an Apple Tree company policy. In resisting Susie's Motion for Summary Judgment, Apple Tree strongly relies on the inference of non-discrimination originally adopted by some courts in age discrimination claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"). This inference of non-discrimination has been used to rebuff a claim of age discrimination where the person hiring and firing the plaintiff is the same individual. This court questions the applicability of the inference of non-discrimination in the ADA context because of important differences between ADA and ADEA claims. Finally, the court concludes that Susie is not entitled to summary judgment because a material question of fact exists as to the employer's motivation in terminating her.

Martha M. McMinn and Andrew T. Orr, Sioux City, IA, for plaintiff.

William K. Stoos and James C. Hanks, Sioux City, IA, for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

This is an employment discrimination action by a discharged preschool teacher who either has epilepsy or was perceived to have epilepsy by her former employer, Apple Tree Preschool and Child Care Center, Inc. ("Apple Tree"). Plaintiff, Sharon Susie ("Susie") alleges that she was discharged from her employment in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). She also asserts a parallel pendent claim for disability discrimination under Iowa law. Susie seeks summary judgment pursuant to Federal Rule of Civil Procedure 56 on the issue of Apple Tree's liability for her discharge. Apple Tree contends Susie was terminated for writing a letter to her students' parents concerning employ-

## I. INTRODUCTION

Susie alleges in her complaint that she was discharged from her employment with Apple Tree on December 9, 1992, because of a disability. Susie has brought this action under the ADA and a pendent claim under Iowa Code 216.6.[1] Pending before the court is Susie's Motion for Summary Judgment filed on June 17, 1994. In her motion for summary judgment, Susie seeks judgment, on the issue of Apple Tree's liability. Apple Tree filed a timely resistance to Susie's Motion for Summary Judgment on October 11, 1994.[2]

## II. FINDINGS OF FACT

### A. Uncontested Facts

For the purposes of this summary judgment motion only, the court finds the following facts:

1. Susie was employed by Apple Tree commencing on November 23, 1987, as a teacher.

---

1. Susie's complaint makes reference to Iowa Code § 601A.6. Iowa Code § 216.6 was renumbered from Iowa Code § 601A.6 in 1993.

2. In an order filed August 31, 1994, Chief United States Magistrate Judge John A. Jarvey granted Apple Tree until October 14, 1994, in which to file a resistance to Susie's motion.

2. At all times pertinent to this litigation, Apple Tree's director was Diane Merchant. Merchant was the individual responsible for hiring Susie.

3. Apple Tree's owner is Mary Susann Meier.

4. At all times relevant to this litigation, Apple Tree was a business operating within the Northern District of Iowa.

5. Susie's employment with Apple Tree continued until December 9, 1992, when she was discharged as of that date.

6. Susie suffers from epilepsy.[3]

7. At the time Susie commenced employment with Apple Tree, her employer had been informed that Susie was an epileptic.[4]

8. Susie asked that any days missed due to her epilepsy be considered as leave without pay and not as either vacation or sick days.

9. Susie had absences from work during her employment with Apple Tree.[5]

10. Susie never had any seizures during her hours of employment at Apple Tree. Susie did have seizures at home and in the hospital during the period of her employment with Apple Tree.

11. On October 29, 1992, Dr. S.J. Purves stated the following in a letter:

This patient has been examined for her chronic medical disorder by myself and I am in the process of altering her medications over the next few months.

This should result in an improvement, but in the meantime she may have some fluctuation while we make these changes.

12. At some unknown date after October 29, 1992, Susie showed Dr. Purves' letter to Meier and Merchant, and requested that, until February of 1993, her absences from work be excused.

13. Meier did not attempt to speak directly with Dr. Purves or attempt to obtain from Susie permission to speak with Dr. Purves regarding his diagnosis of Susie.

14. In the last week of November 1992, in response to Susie's request, Meier and Merchant gave Susie three options: (1) to take a leave of absence; (2) to take a lesser position of teacher assistant; or (3) to have her employment terminated.

15. In regard to a leave of absence, Susie was given no guarantees that she would be reinstated.

16. At some point after Susie was given the three options, she circulated a letter to her students' parents. In the letter, Susie stated:

Dear Parents,

The owner and director of Apple Tree Preschool have requested that I take a lesser position or a leave of absence due to my controlled illness in the past few months and absences.

Due to their decision I have no option but to take the job as aid to the new teacher in the Panda Bear Class. Because of the 12 years of teaching experience I feel that

---

3. Although the court assumes for the purpose of this motion that Susie has epilepsy, and that her epilepsy "substantially limits one or more of an individual's major life activities ...", 42 U.S.C. § 12102(2), the court notes that neither party has produced medical records indicating a diagnosis of epilepsy or its effect on her major life activities. While Apple Tree asserts that Susie may not have epilepsy, but rather some other disorder, this assertion is based largely on statements Susie made to co-workers in which she questioned the diagnosis of epilepsy previously made by unnamed doctors. In any event, at all times during her employment with Apple Tree, her employers assumed that Susie was an epileptic. Thus, under the ADA, because Susie was perceived by Apple Tree as having epilepsy, she satisfies the definition of disability found in 42 U.S.C. § 12102(2)—assuming, as this court is

willing to do in this summary judgment motion, that Susie's epilepsy affected a major life activity or that her employer perceived it as such.

4. The parties dispute how this knowledge came to Susie's employer's knowledge. Susie asserts that she told her employer of her epilepsy at the time she applied for a position with Apple Tree. Apple Tree, however, asserts that Susie failed to mention her epilepsy at the time of her application. Instead, Apple Tree contends that it learned of her epilepsy through one of her job references. In any event, how Apple Tree learned of Susie's epilepsy is irrelevant for the purposes of the court's consideration of Susie's Motion for Summary Judgment.

5. The record does not indicate the number or frequency of Susie's absences.

each child is very special to me and that in some way I have shown the love, patience and understanding they deserve. All the children have a special place in my heart but they will have to adapt to Susann and Dianes [sic] wishes.

Thank you for giving me the chance to share my love of teaching and being a part of your childs [sic] life. If you have any questions please feel free to call or talk to me. Your questions and concerns are very important to me.

17. After its dissemination, the existence of Susie's letter was brought to the attention of Meier and Merchant.

18. Apple Tree has a rule that all newsletters going to parents must be screened and proofed by Merchant.

19. On December 9, 1992, after discussing the letter with Susie, Merchant informed Susie that her employment with Apple Tree was terminated but that she could finish the week out at Apple Tree. Merchant subsequently called Susie on the morning of Thursday, December 10, 1992, and informed her that she did not need to report back to work.

### B. Contested Facts

1. Whether Apple Tree's termination of Susie was based in whole or in part on her disability, on a legitimate non-discriminatory reason, or some combination of both her disability and a legitimate non-discriminatory reason.

2. Was Susie's "misconduct" in sending a letter to her student's parents without prior approval the type of activity which would result in the discharge of a non-disabled individual?

### III. CONCLUSIONS OF LAW

#### A. Standards of Summary Judgment

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d

1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim … is asserted … may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.… *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. 56(b) & (c) (emphasis added); *see also Celotex,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir. 1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed. R.Civ.P.* 56(c)).[6] A court considering a mo-

---

**6.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts

tion for summary judgment must view all the facts in the light most favorable to the non-moving party, here Apple Tree, and give Apple Tree the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving party, Susie, bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). Susie is not required by Rule 56 to support her motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. Apple Tree is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Martin v. Con Agra, Inc.,* 784 F.Supp. 1394, 1395 (S.D.Iowa 1992). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liber-*

suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prod., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir. 1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). "The necessary proof that the non-moving party must produce is not precisely measurable, but it must be enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Martin,* 784 F.Supp. at 1395.

■ In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If non-moving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of Susie's Motion for Summary Judgment.

*ty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel,* 953 F.2d at 394.

## B. Analysis

1. *Requirements under ADA.* The ADA provides in pertinent part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual. . . ." 42 U.S.C. § 12112(a).[7] Three criteria must be met in order to establish a violation of this section: first, Susie must have a "disability"; second, Susie must be "qualified" for the job[8]; and third, Apple Tree's termination of Susie must constitute an unlawful "discrimination" based on her disability. *Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 212 (4th Cir.1994). The court shall consider each of these factors seriatim.

2. *A Disability Under the ADA.* The ADA defines disability as a physical or mental impairment that substantially limits one or more of an individual's major life activities, a record of such an impairment or being regarded as having such an impairment. 42 U.S.C. § 12102(2). The court assumes for purposes of Susie's summary judgment motion that her epilepsy constitutes a disability as defined by the ADA. *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985) (holding that epileptic would be considered handicapped individual under Rehabilitation Act of 1973 even though she averaged only one daytime grand mal seizure per year and

partial seizures lasting a few moments only once every two or three weeks); *see also Rothman v. Emory Univ.*, 828 F.Supp. 537, 541 (N.D.Ill.1993) (denying motion to dismiss ADA claims where plaintiff alleged that defendant law school discriminated against him because of his epilepsy); *Reynolds v. Brock*, 815 F.2d 571, 573 (9th Cir.1987) (holding under Rehabilitation Act that epileptics are handicapped individuals). For purposes of this summary judgment motion only, the court also finds that Susie's disability substantially limits one or more of her major life activities. *See* n. 3 *supra.*

3. *Qualified for the Position.* The court notes that the parties have failed to address whether Susie's disability prevented her from performing the essential functions required of a teacher at Apple Tree, with or without reasonable accommodation.[9] The court, however, notes that Susie was employed at Apple Tree for a period of over five years. The court further notes the record does not indicate that, with accommodations for her absences due to her epilepsy, Susie was unable to perform any function required of her position.[10] Therefore, the court concludes, on the record before it, that Susie's disability did not prevent her from performing the essential functions required of a teacher at Apple Tree.[11] Since she can per-

---

7. The record does not establish whether Apple Tree, as an employer engaged in an industry affecting commerce, has 25 or more employees, which would qualify it as a covered employer under the ADA. *See* 42 U.S.C. § 12111(5).

8. A "qualified individual with a disability" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

9. "The term 'essential functions' means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "The essential functions are by definition those that the individual who holds the job would have to perform, with or without reasonable accommodation, in order to be considered qualified for the position." 29 C.F.R.App. § 1630.2(o). Here, the parties have not identified what they consider to constitute the "essential functions" of a teacher at Apple Tree.

10. Under the ADA, a reasonable accommodation may include "job restructuring, part-time or

modified work schedules," 42 U.S.C. § 12111(9)(B).

11. While there appears to be some issue as to whether Susie's frequent absences prevent her from meeting the statutory requirement that she is a "qualified individual with a disability," 42 U.S.C. § 12111(8), the parties have failed to adequately develop this issue in the summary judgment record before the court. The court does note, however, that federal courts have frequently held that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a qualified individual protected by the ADEA." *Tyndall v. National Educ. Ctrs.*, 31 F.3d at 213. *See also Carr v. Reno*, 23 F.3d 525, 529 (D.C.Cir.1994) (holding that "coming to work regularly" is an "essential function"); *Law v. United States Postal Serv.*, 852 F.2d 1278, 1279–80 (Fed.Cir.1988) (holding that attendance is a minimum function of any job); *Walders v. Garrett*, 765 F.Supp. 303, 309 (E.D.Va. 1991) (holding that "reasonably regular and predictable attendance is necessary for many [jobs]"), *aff'd*, 956 F.2d 1163 (4th Cir.1992); *Santiago v. Temple Univ.*, 739 F.Supp. 974, 979

form those essential functions of the position, she constitutes a qualified individual for purposes of the ADA. Because the requirement of 42 U.S.C. § 12112(a) that Susie be a "qualified individual with a disability" has been met, the court must address whether Apple Tree's termination of her constitutes unlawful discrimination based on Susie's disability, either because she was terminated because of her disability, or Apple Tree failed to reasonably accommodate her disability and in doing so created a chain of events which ultimately led to her termination. This causation issue and the appropriate standard of causation to be applied in an ADA action has neither been addressed or briefed by the parties.[12]

**4. Termination for Misconduct.** Susie contends that she was terminated because of her epilepsy and that her employer failed to make reasonable accommodations to her disability. Apple Tree, on the other hand, asserts that Susie's employment at Apple Tree was terminated because of her misconduct in sending a letter to her students' parents, in violation of Apple Tree's rule that all letters to parents must first be cleared through Merchant.[13]

■ Apple Tree points out that in *Tyndall*, 31 F.3d at 214, the Fourth Circuit adopted the inference that where the person hiring and the person firing are the same person, " 'there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer . . .' " *Id.* (quoting from *Proud v. Stone*, 945 F.2d 796,

797 (4th Cir.1991)).[14] Because Susie was both hired and fired by Merchant, such an inference *may* be applicable here.[15] I do, however, have grave reservations as to whether the inference of non-discrimination established in *Proud*, and adopted by this circuit in *Lowe*, has the same general applicability to claims arising under the ADA as it does to claims arising under the ADEA. In *Tyndall*, the court held that "[w]hile *Proud* addressed a claim of age-based discrimination, the strong inference of nondiscrimination when the hirerer and firerer are the same person applies to disability discrimination claims as well." *Tyndall*, 31 F.3d at 215. I disagree. While the court's statement in *Tyndall* may be true in some limited cases under the ADA, to the extent the court intended the inference of non-discrimination to apply generally to ADA cases, the *Tyndall* court paints with too broad a brush. Upon closer scrutiny, I believe the application of the inference of non-discrimination to ADA disability discrimination cases may prove to be the exception rather than the rule.

The inference of non-discrimination first articulated in *Proud* and applied in *Lowe* arose in the context of age discrimination claims arising under the ADEA. There are important distinctions between claims under the ADA and ADEA which caution against general application of this inference of non-discrimination in disability cases. For example, employers may not know the full extent of an individual's disability at the time of

---

(E.D.Pa.1990) ("attendance is necessarily the fundamental prerequisite to job qualification"), *aff'd*, 928 F.2d 396 (3d Cir.1991). The summary judgment record fails to indicate the number or frequency of Susie's absences, as well as Apple Tree's policy, if any, concerning Susie's absences.

12. In their summary judgment briefing, the parties have failed to flesh out whether this case is a "pretext case" or "mixed motive case." This distinction has dramatic consequences for determining the applicable burdens of proof. *See generally Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 448–49 (8th Cir.1993); *Holmes v. Marriott Corp.*, 831 F.Supp. 691, 696–698 (S.D.Iowa 1993). Also, the parties have failed to address the threshold issue of whether the analytical paradigm of "pretext" and "mixed motive" cases arising under Title VII and the ADEA should be applied to claims arising under the ADA.

13. The court notes that Apple Tree has not produced the text of the policy which Susie is alleged to have violated. The court, of course, offers no opinion on either the validity of the policy or whether Susie's conduct arguably fell within the parameters of such a policy.

14. The United States Court of Appeals for the Eighth Circuit has followed the rule in *Proud* in *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173 (8th Cir.1992).

15. I have addressed at some length the inference of non-discrimination articulated in *Proud* in the context of a age discrimination claim arising under the ADEA in *Holmes v. Marriott Corp.*, 831 F.Supp. 691, 699–702 (S.D.Iowa 1993). There, I observed that "[i]t is clear, however, that the rule in *Proud–Lowe*, should not be applied in an iron clad fashion." *Holmes*, 831 F.Supp. at 701.

hire. In *Tyndall*, the plaintiff, who suffered from lupus erythematosus, was hired by her employer with "full knowledge of her disability only two years earlier." *Id.* at 211. This court, however, doubts that most employers have full knowledge of their employees disabilities at the time of their hire. Indeed, precisely because Congress found that "individuals with disability are a discreet and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society ...," 42 U.S.C. § 12101(a)(7), employers are generally prohibited from making any preemployment inquiries of a job applicant regarding whether the job applicant has a disability or the severity of a disability.[16] 42 U.S.C. § 12112(d)(2). Also, because many disabilities may worsen over time, the scope and nature of the employer's duty to reasonably accommodate the disability may also change dramatically. Thus, unlike cases under the ADEA—where age is a constant factor—the employer's knowledge of a employee's disability, the nature and scope of the disability, and the degree of a required reasonable accommodation may substantially vary after the individual's hiring. These factors, which may substantially vary following an individual's hiring, are not present in age discrimination cases under the ADEA, and have the potential of minimizing, if not eliminating, the force of the inference of non-discrimination articulated in *Proud* and adopted in *Lowe.*

 Regardless of whether such an inference is applicable in this ADA case, however, it is clear that a material question of fact exists in this case regarding Apple Tree's motivation in terminating Susie. As this court previously noted in the context of an ADEA case:

> issues of an employer's motivation in discharging an employee—often riddled with subtleties and nuances from which vastly different conclusions maybe drawn—are particularly well-suited for determination by the ultimate trier of fact—in this case a jury.

*Holmes v. Marriott Corp.,* 831 F.Supp. 691, 713 (S.D. Iowa 1993). This observation is particularly appropriate here where the trier of fact must determine whether Apple Tree's discharge of Susie was based on discriminatory intent. Here, the court concludes that a reasonable trier of fact could, but would not be compelled to, return a verdict for the nonmoving party, Apple Tree. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. Therefore, Susie's Motion for Summary Judgment, attempting to establish Apple Tree's liability under the ADA, is denied.[17]

**IT IS SO ORDERED.**

---

**16.** The ADA does provide that: "[a] covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions." *See* 42 U.S.C. § 12112(d)(2)(B).

**17.** The court is surprised, given that so obvious a question of fact exists in this case concerning Apple Tree's motivation in terminating Susie, that either party would, in good faith, venture forth with a motion for summary judgment.