**Deborah GEFFRE et al.**

v.

**METROPOLITAN COUNCIL**

**No. 99–CV–715(JMR/FLN).**

United States District Court,
D. Minnesota.

Sept. 19, 2001.

Randall D.B. Tigue, Tigue Law Office, Minneapolis, MN, for plaintiffs.

Marc A Al, Lindquist & Vennum, Minneapolis, MN, J Dennis O'Brien, Stanley Eugene Siegel, Rider Bennett Egan & Arundel, Minneapolis, MN, Nils Frederick Grossman, St Paul, MN, Andrew D Parker, Nancy V Mate, Smith Parker, Minneapolis, MN, Matthew Edwin Johnson, Halleland Lewis Nilan Sipkins & Johnson, Minneapolis, MN, for defendant.

## ORDER

ROSENBAUM, District Judge.

Defendant established a random drug testing program for its wastewater treatment plant employees. The program was negotiated as part of a collective bargaining agreement between the union, of which the plaintiffs are members, and defendant.

Plaintiffs claim the random drug testing violates the Fourth Amendment to the United States Constitution, and seek a declaratory judgment finding the policy unconstitutional and enjoining its implementation.

Defendant argues that plaintiffs, through their union's ratification of the collective bargaining agreement, consented to the drug testing program. Defendant further claims the testing does not violate the Fourth Amendment. Defendant seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth herein, defendant's motion is granted; plaintiffs' requests are denied.

### I. Background

#### A. The Parties

Defendant, Metropolitan Council, is a Minnesota regional public agency operating in the Twin Cities metropolitan area. Among other duties, it is responsible for processing wastewater in the seven-county Minneapolis/St. Paul metropolitan area.

Plaintiffs are employees of defendant, and all are members of the Local 35 of the International Union of Operating Engineers, AFL/CIO ("Local 35"). As such, they have elected Local 35 as their exclusive representative in negotiating the terms and conditions of their employment.

#### B. The Facts

Prior to July 1, 1998, plaintiffs were subject to random drug testing under two separate conditions: first, when management had a reasonable suspicion that an employee's performance was affected by the use of alcohol or illicit drugs; and second, when employees occupied "safety-sensitive" positions. Prior to September, 1998, since none of the plaintiffs were classified in "safety-sensitive" positions, they were not subject to random drug testing.

At the end of the 1995–1997 collective bargaining agreement, defendant and Local 35 entered into negotiations, during which defendant raised concerns about problems with employee attendance, performance, and conduct that it believed was attributable in part to drugs or alcohol. It sought to extend its drug testing policy to other members of Local 35.

After negotiations, management achieved the ability to impose random drug testing in exchange for union seniority demands. This new policy, effective September 1, 1998, allowed random drug

and alcohol testing of all Local 35 employees, regardless of individualized suspicion or the classification of their positions as "safety-sensitive." The full Local 35 union membership ratified the new collective bargaining agreement.

## II. *Summary Judgment*

Defendants seek summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. *Id.* at 248–49, 106 S.Ct. 2505. *See also Hartnagel v. Norman,* 953 F.2d 394, 395–96 (8th Cir. 1992). If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Mt. Pleasant v. Associated Elec. Coop., Inc.,* 838 F.2d 268 (8th Cir. 1988). The question of whether a particular search is reasonable for purposes of the Fourth Amendment is a question of law, making it appropriate for summary judgment. *Dykes v. Southeastern Penn. Trans. Auth.,* 68 F.3d 1564, 1568 (3rd Cir. 1995).

Plaintiffs primarily argue that they do not hold "safety-sensitive" positions, and thus, cannot be subject to random drug testing without violating their Fourth Amendment rights. Defendant asserts that, through negotiations with Local 35, plaintiffs validly consented to the testing. Defendant further asserts that the testing is reasonable under the Fourth Amendment because all plaintiffs hold safety-sensitive positions; because the need for drug testing is great; and because any intrusions on the plaintiffs' privacy are limited.

## III. *Analysis*

### A. *Plaintiffs' Consent*

■ Mandatory drug testing through urinalysis constitutes a search within the meaning of the Fourth Amendment to the United States Constitution. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). The Fourth Amendment, of course, prohibits only unreasonable searches. *Id.* at 619, 109 S.Ct. 1402. The Supreme Court has also made clear that voluntary searches do not offend the Fourth Amendment regardless of whether the search was reasonable. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ A union, acting as an exclusive bargaining agent, may validly consent to drug testing on behalf of the employees it represents. *See Dykes v. SEPTA,* 68 F.3d 1564, 1569 (3rd Cir.1995) (holding that a union may expressly or implicitly consent to drug testing of the employees it represents); *Bolden v. Southeastern Penn. Transp. Authority,* 953 F.2d 807, 828 (3rd Cir.1991) (holding that a union, acting as an exclusive bargaining agent, may consent to drug testing on behalf of the employees it represents). Therefore, unless union employees can demonstrate a breach of their union's duty of fair representation, they are bound by that consent. *Bolden,* 953 F.2d at 828. Here, plaintiffs have not alleged any breach of their union's duty of

fair representation, nor have they shown any evidence that such a breach occurred. Thus, they are bound by Local 35's consent regardless of the reasonableness of the drug testing. *See Dykes,* 68 F.3d at 1570 (stating the holding of *Bolden* as establishing "that even when a drug testing policy is constitutionally invalid, a public employee may not pursue a civil rights suit based upon that infirmity where his union and his employer agree to operate under that policy").

 Plaintiffs contend, however, that their consent to the collective bargaining agreement is invalid, because the Minnesota Public Employee Labor Relations Act ("PERLA") does not allow any provision of a collective bargaining agreement to be "in conflict with the laws of Minnesota." Minn.Stat. § 125.12(4). From this, plaintiffs argue that random drug testing of non-safety-sensitive classified employees violates Minnesota law, particularly the Minnesota Constitution and Minn.Stat. § 181.955.[1] Plaintiffs' argument fails, because the Court has already dismissed their § 181.955 claim as being time barred;[2] and secondly, they have made no claims under Minnesota's Constitution in their complaint.

 Plaintiffs' claims also fail, because even assuming they alleged a Minnesota Constitutional violation, Minnesota's constitutional law, like that of the United States, provides that voluntary consent vitiates an unreasonable search. *State v. Harris,* 590 N.W.2d 90, 102 (Minn.1999).

Further, Minnesota law provides that a union acts as an agent for employees, and its members are "as much bound by the contract executed in their behalf . . . as if they had executed it themselves." *McLean Distributing Co. v. Brewery and Beverage Drivers,* 254 Minn. 204, 94 N.W.2d 514, 525 (1959). Even assuming the drug testing policy is unreasonable, it was validly consented to by Local 35, plaintiffs' union agent. Therefore, the policy does not violate the Minnesota Constitution, *id.,* and plaintiffs' argument that their union's consent is invalid fails.

Defendant further claims that during its contract negotiations, Local 35 considered the random testing issue and agreed with management that all Local 35 positions were safety-sensitive. As a result, according to defendant, Local 35 agreed to subject all of its members to random testing. 2d Arbour Aff., ¶ 24. Plaintiffs dispute that the Local 35 considered this.

If defendant's contention is true, the drug testing program would comply with § 181.955, even assuming that claim was still viable.[3] This fact-based question need not be resolved, however, because, as set forth below, the Court finds as a matter of law that the drug testing was reasonable, because the plaintiffs are in safety-sensitive positions. *See Dykes v. Southeastern Penn. Trans. Auth.,* 68 F.3d 1564, 1568 (3rd Cir.1995) (whether a particular search is reasonable for purposes of the Fourth Amendment is a question of law, making it appropriate for summary judgment).

---

1. The relevant portion reads as follows: "An employer may request or require only employees in safety-sensitive positions to undergo drug and alcohol testing on a random selection basis." Minn.Stat. § 181.955(4).

2. Plaintiffs do not have a viable claim alleging violations of the Minnesota Constitution or § 181.955. This Court previously dismissed plaintiffs' claims arising under § 181.955 as

time-barred in its Order dated September 9, 1999. Plaintiffs never alleged a violation of the Minnesota Constitution. Therefore, the only remaining question is whether the random drug testing violates the United States Constitution.

3. See *supra* note 2.

## B. *The Drug Testing Policy is Reasonable*

■ Even if the random drug testing had not received the union's valid consent, the policy is reasonable in light of all the surrounding circumstances. Both parties agree that persons employed in safety-sensitive positions are properly subject to random drug testing. They disagree, however, as to whether these particular plaintiffs hold safety-sensitive positions. The Court finds they are properly included amongst those who are in safety-sensitive positions.

■ Whether a search is reasonable depends on a balancing of the individual's privacy interests against the promotion of legitimate governmental interests. *Skinner v. Railway Labor Exec.*, 489 U.S. 602, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989). In criminal cases, this balance is struck in favor of requiring a warrant and probable cause. *Id.* But the *Skinner* court made it clear that probable cause is not the constitutional standard by which job-related drug testing is measured. *Skinner*, 109 S.Ct. at 1415. The Court recognized an exception for "special needs beyond the normal need for law enforcement." *Id.* at 1414–15. In this area, a court must carefully balance any intrusion on an individual's privacy against a defendant's need to conduct the search. *Id.*

Here, defendant has a special need because there is a risk of serious personal injury and significant harm to the public health and environment. The record is rife with examples of personal injuries and dangers to the public arising at defendant's sewage treatment facility. *See, e.g.*, 2d Arbour Aff., Ex. 3. (sewage spill of 167,000 gallons in to the Mississippi River); 2d Arbour Aff., Ex. 5 (numerous reports of serious injury to employees); 2d

Arbour Aff., Ex. 7 (incinerator fire); Wareham Aff., Ex. 13–22 (reports of believed or verified drug or alcohol use); Murphy Aff. (gas leak). Thus, defendant has shown a compelling special need to conduct random drug testing.

■ Additionally, notwithstanding their present representations to the contrary, these plaintiffs all occupy safety sensitive positions. Indeed, their answers to defendant's interrogatories show their work is safety-sensitive. *See* 2d Parker Aff., Ex. 24–39. Plaintiffs perform tasks which require handling hazardous chemicals, operating heavy equipment, and responding to unexpected and emergency situations. *Id.* Their contradictory affidavits, submitted as part of their response to the present motion for summary judgment, cannot, as a matter of law, create an unresolved question. A party cannot revise their own prior testimony in order to create an unresolved question of fact where none existed before. *American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111 (8th Cir.1997).

Plaintiffs' duties are similar to those in other jobs where random drug and alcohol drug testing programs have been found reasonable. *See, e.g., International Bhd. Of Elect. Workers, Local 1245 v. Skinner*, 913 F.2d 1454, 1458 (9th Cir.1990) (holding random drug testing without individualized suspicion of employees who worked with pipelines carrying natural gas and hazardous liquids reasonable); *Bailey v. City of Baytown*, 781 F.Supp. 1210, 1214–15 (S.D.Tex.1991) (holding random drug testing reasonable as applied to wastewater treatment plants).

Furthermore, plaintiffs have a diminished expectation of privacy because they work in an industry that is already heavily regulated to insure safety. *Skinner*, 109 S.Ct. at 1418 (holding that when an em-

ployee chooses to work in a highly regulated industry, that employee has a diminished expectation of privacy). Additionally, the testing procedure employed by defendant minimizes intrusion on the employees' expectation of privacy. *See id.* at 1417 (recognizing the significance of endeavors to minimize the intrusiveness of the collection process and holding that a similar testing procedure was constitutional). The drug tests in this case are conducted in a medical setting by a certified collection service, where potentially embarrassing personal information is kept confidential. Further, the testing does not include a requirement that the employee be observed while collecting his or her urine, thereby reducing the intrusion on the employee's privacy.

When considering all of these factors, the Court finds there is only a limited intrusion on the plaintiffs' already diminished privacy interests. The Court further finds defendant's interest in random drug and alcohol testing far outweighs the limited intrusion on the plaintiffs' privacy.

III. *Conclusion*

Based on the foregoing, the Court finds as a matter of law that the drug testing policy does not violate the Fourth Amendment of the United States Constitution. Plaintiffs consented to this search through the collective bargaining process and ratified it by their union vote. As a result, they waived any constitutional challenge. Regardless of this waiver, the Court finds the random drug testing program to be reasonable in light of defendant's special needs and the limited intrusion on plaintiffs' limited privacy interests. Accordingly, defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.