**Julie DALE et al.**

v.

**WELLS FARGO BANK, N.A.**

**No. 04–CV–95(JMR/FLN).**

United States District Court,
D. Minnesota.

May 6, 2005.

Charles Joseph Lloyd, Kristin Loedrup Choi, Minneapolis, MN, for Julie Dale et al.

Paul W. Heiring, Steven Lee Severson, Minneapolis, MN, for Wells Fargo Bank, N.A.

## ORDER

ROSENBAUM, Chief Judge.

Market-priced financial assets move and shift in an instant. In that instant, their values can fluctuate. Plaintiffs claim de-

fendant caused them financial loss during such a fluctuation. The parties are before the Court on cross-motions for summary judgment. Defendant's motion is granted.

## I. *Background*

Twin City Fan Company, Ltd., and Twin City Clarage, Inc. ("the Employers"), sponsor and administer three retirement and profit sharing plans for their employees. In 1991, the Employers retained defendant, Wells Fargo Bank, to be the Recordkeeper and Trustee of the plans. The Employers, however, maintained their role as the plans' named fiduciaries, meaning they retained ultimate authority to direct and control the investment and disposition of plan assets.

In early 2003, the Employers decided to transfer the Recordkeeper and Trustee functions from defendant to U.S. Bank. Defendant was directed to liquidate the plans to cash on April 30, and wire transfer the plans' assets to U.S. Bank as soon as possible after U.S. Bank's appointment as Trustee on May 1. (Santi Aff., Ex. B. at Santi 292.) The Employers also directed defendant to fax U.S. Bank a breakdown, by fund, of the amounts transferred in order to facilitate swift reinvestment of assets. (*Id.*)

Defendant and U.S. Bank worked together to accomplish a smooth transition. On March 27, 2003, U.S. Bank sent an e-mail to defendant warning it would be difficult to reinvest the assets by close of the market on May 1, unless the wire transfer was received before 11:00 a.m. (Central Time). (Santi Aff., Ex. C at Santi 303.) U.S. Bank also requested that defendant fax the fund breakdown before 11:00 a.m. (*Id.*) The actual transfer events occurred as follows: Wells Fargo faxed the fund breakdown to U.S. Bank at 1:46 p.m.;

Wells·Fargo wired the assets for the three plans at 4:27 p.m., 4:43 p.m., and 4:47 p.m.[1] (*See id.* at ¶¶ 14–16.)

The market closed at 3:00 p.m. This case arises because the transfers occurred after that time. As a result, U.S. Bank could not reinvest the assets until May 2. During trading on May 1, 2003, however, the value of the stocks to be purchased rose. So when the plans' assets were reinvested the following day, plaintiffs acquired fewer shares than they could have purchased the day before. Plaintiffs seek the difference in value.

Plaintiffs—the three plans and two individual employees who participate in the plans—claim defendant breached its fiduciary duty to timely transfer the assets. They make two claims under the Employee Retirement Income Security Act ("ERISA"), and three claims under state law. Plaintiffs and defendant each seek summary judgment.

## II. *Analysis*

Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. *See Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Hartnagel v. Norman,* 953 F.2d 394, 395–96 (8th Cir.1992). If the opposing party fails to carry that burden or fails to establish an essential element of

---

**1.** A first attempt to transfer the funds was apparently made at 1:38 p.m., but failed for an unknown reason. (*See* Weise Aff. at ¶ 8.)

its case, summary judgment should be granted. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### A. *The ERISA Claims*

■ Plaintiffs claim defendant's "sloppiness in handling the transfer of the assets" breached its ERISA duties. (Pl.'s Opp'n to Def.'s Motion at 3.) To establish their prima facie case, plaintiffs must prove that: (1) defendant was an ERISA fiduciary; (2) defendant breached its fiduciary duty; and (3) the breach caused their loss. *See Eckelkamp v. Beste,* 315 F.3d 863, 867 (8th Cir.2002). The Court finds plaintiffs have failed to produce evidence from which a jury could find that defendant breached its fiduciary duty. As a result, plaintiffs' ERISA claims are dismissed.

### 1. *Defendant was a Fiduciary*

■ Under ERISA, a party is a plan fiduciary if it:

> exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or ... has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). As the statute makes clear, discretion begets duty. *Maniace v. Commerce Bank,* 40 F.3d 264, 267 (8th Cir.1994) ("Clearly, discretion is the benchmark for fiduciary status under ERISA.").

Defendant claims it operated without discretion because it was a "directed trustee" rather than a fiduciary. A party is a directed trustee "to the extent that ... the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary." 29 U.S.C. § 1103(a)(1). A directed trustee's sole duty is to follow the directions of a named fiduciary, unless those directions are inconsistent with the plan or contrary to ERISA. *Id.; see Maniace,* 40 F.3d at 267.

Defendant is partially correct; it was a directed trustee in many of its functions. For example, the plan agreements allowed the Employers, as named fiduciaries, to direct defendant to make investments. (Santi Aff., Ex. A at Santi 043 & 256.) The defendant had no discretion in making these investments, so defendant had no fiduciary duty to ensure the investments were prudent; its only duty was to follow the directions given. *See Maniace,* 40 F.3d at 267.

■ But "[f]iduciary status under § 1002(21)(A) is not an all-or-nothing concept." *Kerns v. Benefit Trust Life Ins. Co.,* 992 F.2d 214, 217 (8th Cir.1993) (internal quotations omitted). In other words, a party may be a directed trustee with respect to one task, but a fiduciary with respect to another. Thus, the Court must examine "whether a person is a fiduciary with respect to the particular activity in question." *Id.* (quoting *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 61 (4th Cir.1992)).

■ The activity in question here is defendant's transfer of the plan assets to U.S. Bank. Defendant received a letter from the Employers on March 11, 2003, directing it to transfer the funds "as soon as possible" after U.S. Bank's appointment as Trustee. (Santi Aff., Ex. B at Santi 292.) This was the only instruction Wells Fargo received from a named fiduciary. The named fiduciaries never directed defendant to make this transfer in any particular manner or by any particular time.

The Employers' broad direction to effect the transfer "as soon as possible" gave defendant discretion to arrange the timing and manner of the transfer. Defendant was therefore afforded "control respecting management or disposition of [the] assets" from the time the plans were liquidated,

until it completed the transfer to U.S. Bank. 29 U.S.C. § 1002(21)(A). Such control created discretion, which bestowed a corresponding fiduciary duty upon defendant to handle the transfer prudently.

### 2. *Defendant Did Not Breach its Duty*

Having recognized defendant's fiduciary duty, the Court finds the duty was not breached. An ERISA plan fiduciary must act "in accordance with the documents and instruments governing the plan" and with the "care, skill, prudence, and diligence ... that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B) & (D). Plaintiffs claim defendant breached its duty of prudence, which is imposed both by statute (Count I) and by the plan documents (Count II), in failing to transfer the plan funds in time to have them reinvested on May 1, 2003. Plaintiffs' claims thus turn on whether defendant's actions during the transfer were imprudent or unreasonable.

### a. *No Duty to Transfer By 11:00 a.m.*

▪ Plaintiffs claim defendant performed imprudently by failing to transfer the assets before the 11:00 a.m. "deadline." In the cold light of 20/20 hindsight, such punctuality might have been desirable, but the Court finds defendant had no legal duty to observe this "deadline." This is because no 11:00 a.m. "deadline" was ever established.

Under the plans, the Employers were the named fiduciaries. It was the Employers who had the authority to set a deadline—but they did not. They never directed defendant to transfer the assets by 11:00 a.m. They simply directed Wells Fargo to transfer the funds "as soon as possi-

ble" after U.S. Bank's appointment as Recordkeeper and Trustee on May 1. This directive gave defendant discretion in the exact timing of the transfers—and created a duty to act prudently—but it did not set a deadline.

U.S. Bank did not set an 11:00 a.m. deadline, either. U.S. Bank sent its March 27, 2003, e-mail explaining the potential consequences of a post–11:00 a.m. wire transfer. This e-mail, which was couched in conditional language, stated the simple fact that "[i]f the actual wire transfer is not received until after 11:00 a.m. (Central Time), the funds will be invested the same day on a 'best effort' basis." (Santi Aff., Ex. C at Santi 303.) Implicit in this communication is the understanding that transfers can and do occur after 11:00 a.m. The e-mail merely states the truism that a post–11:00 a.m. transfer would make reinvestment before the close of market more difficult. This did not create a deadline.

Even if the Court considered U.S. Bank's e-mail an attempt to establish an 11:00 a.m. deadline, the deadline would have been ineffective. This is because U.S. Bank had no authority to create a deadline. The law affords only the plans' named fiduciaries—the Employers—authority to direct defendant's actions regarding plan assets. 29 U.S.C. § 1103(a)(1). When U.S. Bank sent its e-mail, it was in the process of replacing defendant as the plans' Recordkeeper and Trustee. It was not designated, nor has it been designated, a named fiduciary. Thus, U.S. Bank lacked authority to direct defendant's actions or bind defendant to an 11:00 a.m. deadline. Defendant was under no duty to comply with U.S. Bank's purported 11:00 a.m. "deadline" even if it were a deadline.[2] Instead, defendant was at all times bound only by the Employers' di-

**2.** The Employers arguably could have delegated to U.S. Bank the authority to establish a deadline for the transfers. There is no evi-

dence, however, that such a delegation occurred.

rection to make the transfers "as soon as possible" after U.S. Bank's appointment on May 1.

### b. *No Duty to Notify*

Plaintiffs next claim Wells Fargo acted imprudently in failing to notify U.S. Bank that the transfer would not be completed by 11:00 a.m. Plaintiffs' expert opines that notice would have been the reasonable and prudent course, particularly in light of the large volume of wire transfers that typically take place on the first of the month. (Weise Aff. at ¶¶ 6 & 11.) In the absence of any reported case or Restatement suggesting such a duty, however, the Court is disinclined to impose it.

■ The Court, for a moment, indulges in the assumption that the claimed duty to notify existed, and imagines that defendant had fulfilled it. There are two possible consequences. One is that U.S. Bank would have done nothing. In that scenario, everything in this case would be the same, and there is no evidence that the simple fact of a notice would have ameliorated the situation or assuaged plaintiff's loss. The second possibility, suggested at argument, is that U.S. Bank would have advanced funds to make a market-investment in anticipation of later-receiving the plan assets. (*See Id.* at ¶ 10.) The Court considers this unlikely in the extreme.

The plans' named fiduciaries always retained the power to redirect the plan assets while they were in defendant's custody. This means the Employers could have changed defendant's instructions even after any notice was given to U.S. Bank. It is, therefore, rank conjecture—a conjecture in which the Court will not indulge—to assume that a notice to U.S. Bank would have resulted in any advance investment, presumably by advance of U.S. Bank's own funds, on behalf of the plans.

The Court holds as a matter of law that Wells Fargo had no duty to notify U.S. Bank that the funds' assets would arrive after 11:00 a.m.

### c. *Wells Fargo Performed Prudently*

Plaintiffs' case ultimately turns on its assumption that defendant's part in causing a one-day delay in investing the plans' assets was *per se* imprudent. There is neither evidence nor law to support this assumption. Although the transfers took place after 11:00 a.m., they were completed on the same business day the fiduciaries specified. Had the fiduciaries directed that the funds actually be invested on May 1, a duty likely would have been imposed upon defendant to make the transfers on April 30. But this was not the direction defendant received.

It is also fair to note that, had such a directive been given, Wells Fargo could well have informed the Employers that it might have been difficult or impossible to meet. By failing to provide a true deadline, plaintiff gave defendant no incentive to discuss with the plans' fiduciaries any reasons why the purported deadline might not have been attainable.

■ The Court cannot find that causing a single day's delay in reinvestment of assets, without more, is a breach of fiduciary duty. Markets are volatile; no one can predict whether they will rise or fall on any particular day. If the market had gone down on May 1, 2003, the lapse of time might well have been a benefit. This is not to say the delay did not in fact "cause" plaintiffs' loss—since the market did go up—just that no one could have known *ex ante* whether a day's delay would be beneficial or detrimental to the value of the plans.[3] Thus, the delay, in and of itself, does not reveal imprudence.

---

**3.** One can imagine what might have happened if the delay had fallen over October 29, 1929, or October 19, 1987. On those dates,

Plaintiff has failed to produce evidence from which a reasonable jury could find defendant performed imprudently. It transferred the plans' assets on the prescribed day, completing its work by the end of the business day and before the Federal Reserve Bank's close of business at 5:00 p.m.[4] (Santi Aff. at ¶ 23.) Moreover, under the plan service agreements, Wells Fargo guarantees only a three-day turnaround for similar transactions. (Santi Aff., Ex. A at Santi 254.) Defendant's performance in making the transfers was therefore well within the bounds of reasonable prudence.

Defendant's performance did not fall below ERISA's prudent-person standard. Therefore, defendant did not breach any duty to plaintiffs, and the ERISA claims must be dismissed.

### B. *The State Law Claims*

 ERISA explicitly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *see Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (establishing complete federal preemption in ERISA cases). Plaintiffs' state law claims clearly arise from the same set of facts as plaintiffs' ERISA claims. They therefore "relate to" the employee benefit plans; as such, they are preempted and must be dismissed along with the ERISA claims. *See, e.g., Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52–56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

the plans might have reaped an astounding windfall—but only if the administrators had been willing to outlast the remaining vagaries of a volatile market.

**4.** Defendant directs the Court to Fidelity Investments, another major retirement services

### III. *Conclusion*

For all of the foregoing reasons, defendant's motion for summary judgment must be granted. Accordingly, IT IS ORDERED that:

1. Plaintiffs' motion for summary judgment [Docket No. 15] is denied.

2. Defendant's motion for summary judgment [Docket No. 22] is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

company, which guarantees only that these kind of wire transfers will be completed prior to the Federal Reserve Bank's 5:00 p.m. close of business. (*See* Santi Aff., Ex. G. at Santi 332.)