**HEATHER K., a child, by next friends ANITA K. and Thomas K., Plaintiff,**

v.

**CITY OF MALLARD, IOWA, Defendant.**

No. C 95–3048–MWB.

United States District Court, N.D. Iowa, Central Division.

Nov. 8, 1996.

Blake Parker of Fort Dodge, Iowa, for Plaintiff Heather K.

Michael L. Brown of Emmetsburg, Iowa, for Defendant City of Mallard.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### TABLE OF CONTENTS

I. INTRODUCTION ...................................................................1375
II. STANDARDS FOR SUMMARY JUDGMENT ...............................1377
III. FINDINGS OF FACT ..........................................................1378
 A. Undisputed Facts ..........................................................1379
 B. Disputed Facts ............................................................1382
IV. LEGAL ANALYSIS ............................................................1382
 A. Liability Under Title II Of The ADA .................................1383
 B. "Reasonable modification" ..............................................1387
V. CONCLUSION...................................................................1389

BENNETT, District Judge.

Can a municipality incur liability under Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, for its allegedly inadequate regulation of open burning of yard waste? A very young child who suffers from severe respiratory and cardiac conditions as the result of her extremely premature birth seeks permanent injunctive relief against the municipality where she lives requiring the municipality to pass a city ordinance imposing reasonable limitations on backyard burning of residential waste. The court granted a temporary restraining order (TRO) in this case almost a year-and-a-half ago over the municipality's objections, *see Heather K. by Anita K. v. City of Mallard, Iowa*, 887 F.Supp. 1249 (N.D.Iowa 1995), then a preliminary injunction on terms agreed to by the parties, restraining and enjoining portions of the municipality's existing open-burning ordinance. The municipality has now moved for summary judgment asserting principally that it has no liability under Title II of the ADA for its regulation of open burning. The municipality's argument is based on an advisory letter from the U.S. Department of Justice to the U.S. Department of Interior regarding another complaint involving open burning. The municipality asserts that the position of the Department of Justice expressed in this advisory letter means that the municipality cannot be held liable under Title II of the ADA where it neither burns yard waste itself nor requires citizens to do so, but only regulates such activity conducted by private

individuals. The municipality's motion for summary judgment is also based on its passage of an amended open-burning ordinance, which it apparently asserts is a "reasonable modification" as a matter of law, and thus discharges any duty the municipality may have under Title II of the ADA. The disabled plaintiff asserts that the municipality's motion for summary judgment should be denied, because the municipality's regulation of open burning is subject to Title II of the ADA, and because there are genuine issues of material fact as to whether the municipality's amended open-burning ordinance constitutes a reasonable modification sufficient to satisfy the requirements of the ADA.

## I. INTRODUCTION

Plaintiff Heather K. filed an application to proceed in this matter *in forma pauperis* on May 22, 1995. That application was granted on May 23, 1995, and this lawsuit was filed on the same day. Also on May 23, 1995, Heather K. filed a motion for temporary restraining order and preliminary injunction and a motion to proceed under a pseudonym and for a protective order. The court granted those motions on May 25, 1995. *See Heather K.*, 887 F.Supp. at 1268–69.

Plaintiff Heather K. is a child who, as the result of her premature birth, suffers from respiratory and cardiac conditions aggravated by particulates, such as smoke, in the air she must breathe. Her lawsuit is brought pursuant to Title II of the Americans With

Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.* Title II of the ADA prohibits discrimination on the basis of disability in the provision of public services, and Part A of that Title, the relevant part here, prohibits such discrimination by a public entity. 42 U.S.C. §§ 12131, 12132. In addition, Heather K. asserts a claim pursuant to the Rehabilitation Act, 29 U.S.C. § 701, specifically, section 794. The defendant is the City of Mallard, Iowa, the city in which Heather K. resides with her parents.

The complaint seeks temporary and permanent injunctive relief and damages as the result of alleged violations of Heather K.'s civil rights guaranteed by the ADA and the Rehabilitation Act. Specifically, Heather K. alleges that "Defendant has failed to pass a city ordinance imposing reasonable limitations on the backyard burning of residential waste." Complaint, ¶ 1.[1] Heather K. alleges irreparable injury to her life and health as the result of the City's refusal to ban open burning, and, additionally, alleges that the City's inaction has caused her to be segregated from the rest of the Mallard community.[2] Owing to the court's grant of a TRO on May 25, 1995, and subsequent grant, on June 12,

1995, of an agreed preliminary injunction restraining and enjoining portions of the City of Mallard's open-burning ordinance, this matter is scheduled for trial on January 6, 1997, on Heather K.'s claims for permanent injunctive relief and damages.

The parties pursued both discovery and active efforts at amicable settlement. However, on August 22, 1996, as the deadline for dispositive motions approached, the City moved for summary judgment or, failing such relief, for a clarification of the issues remaining for trial. The City asserts that it has made a reasonable modification of its open-burning ordinance, which would limit open burning to eighteen days per year plus alternate dates in the case of inclement weather. The City contends further that there can be no legal liability from the City to Heather K. on her claim under Title II of the ADA. Heather K. resisted the City's motion for summary judgment on September 3, 1996, asserting genuine issues of material fact as to the reasonableness of the new ordinance and asserting that the City's regulation of open burning is subject to Title II of the ADA. Neither party requested oral ar-

---

1. The gravamen of Heather K.'s ADA claim is stated in paragraphs 24 and 25 of her Complaint:

> 24. Defendant, City of Mallard, has discriminated against Heather in violation of 42 U.S.C. § 12131 ... by refusing reasonable accommodations to Heather as a disabled individual through its failure to promulgate a city ordinance which reasonably restricts back yard burning within the city. Defendant's intentional disregard of Heather's rights under the A.D.A. and failure to accommodate her has caused Heather to be segregated from the rest of the community and has precluded Heather from enjoying all rights, privileges and accommodations available to other Mallard citizens.
>
> 25. The City of Mallard's refusal to pass a more restrictive city ordinance limiting the days and time that citizens of Mallard can participate in open burning contravenes 42 U.S.C. Sec. 12131 as Heather K. is thereby excluded from participation in and denied the benefits of the services, programs, and activities of the City of Mallard.

Although the Complaint twice refers to § 12131 of the ADA, that section in fact states only definitions. The operative provision of Title II of the ADA, the section prohibiting discrimination in the provision of services, is actually 42 U.S.C. § 12132. The court will construe the complaint pending amendment as alleging violation of that provision.

The gravamen of Heather K.'s Rehabilitation Act claim is stated in paragraph 30 of the Complaint:

> 30. The City of Mallard has subjected Heather K. to discrimination under a program or activity receiving federal financial assistance solely on the basis of handicap contrary to 29 U.S.C. Sec. 794.

2. The allegations of irreparable injuries are as follows:

> 20. As a result of the inaction of the Defendant, Plaintiff Heather K.'s health and life have been jeopardized. Exposure to even a small amount of smoke will cause an increase in Heather's respiratory rate and may pose dire consequences up to and including loss of life for Heather.
>
> 21. The present ordinance has caused Heather to be segregated, because of her disability, from the rest of the Mallard community. Heather is confined to her home or is forced to leave the community when burning takes place to avoid the serious ramifications to her health which back yard burning can cause.
>
> 22. There is no adequate remedy at law.

Complaint, ¶¶ 20–22.

guments on the motion for summary judgment and the court has not deemed such arguments necessary.[3]

The court turns first to the standards for summary judgment, then to examination of the record to determine what disputed and undisputed facts are presented in this case.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states, in pertinent part, the following:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co. v. Shenandoah South, Inc.*, 81 F.3d 789, 791 (8th Cir.1996); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir. 1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990); *Wabun–Inini*, 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[4] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Heather K., and give Heather K. the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1280 (8th Cir.1996); *Marts v. Xerox, Inc.*, 77 F.3d 1109, 1112 (8th Cir.1996); *Munz*, 28 F.3d at 796; *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Spring-*

---

3. The court regrets that its heavy trial schedule through the late summer and fall months has not made earlier disposition of the motion for summary judgment possible. Nonetheless, the court has attempted to address the motion for summary judgment sufficiently in advance of trial, should trial remain necessary, to allow the parties adequate time to prepare in light of the court's ruling.

4. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel*, 953 F.2d at

394 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394.

*field,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party, here the City, bears "the initial responsibility of informing the district court of the basis for [its] motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). The City is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Heather K. is therefore required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed. R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prods., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison,* 28 F.3d at 66.

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If Heather K. fails to make a sufficient showing of an essential element of a claim with respect to which she has the burden of proof, then the City is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the factual record in this matter.

### III. FINDINGS OF FACT

In its ruling on Heather K.'s application for a TRO, the court gave a statement of the factual background based on the complaint, affidavit verifying the complaint, and brief of the plaintiff in support of the motion for the TRO and preliminary injunction, as well as representations of counsel for both parties at the TRO hearing. *See Heather K.,* 887 F.Supp. at 1253–55. The City has not submitted a statement of undisputed material facts in support of its motion for summary judgment,[5] nor otherwise indicated any disagreement with the facts as stated in the court's prior ruling. Heather K. has submit-

---

**5.** Such failure to submit a statement of undisput- ed facts is a violation of N.D.Ia. LR 14(h).

ted a statement of contested facts,[6] which asserts only two factual disputes that are considered below. The court has augmented its prior findings of fact here, where necessary, from affidavits, exhibits, and deposition transcripts attached to the parties' filings, and from Heather K.'s very brief statement of contested facts and the briefs of the parties.

### A. Undisputed Facts

Plaintiff Heather K. was born prematurely on September 18, 1992, after only 23 weeks gestation. Consequently, Heather suffers from bronchial pulmonary dysplasia.[7] Additionally, when Heather was ten months old, she was diagnosed with diffuse hemangiomatosis [8] with secondary congestive heart failure. As a result of these conditions, Heather cannot tolerate particulates, such as smoke, in the air she breathes without suffering symptoms such as increased respiratory rate, wheezing, and severe vomiting. Her symptoms vary with the amount of smoke or particulates in the air and the length of time she is exposed to such smoke or particulates. The nearest hospital with adequate facilities to deal with Heather's condition in the event of a crisis is in Ames, Iowa, some two and one-half hours from Mallard. In order to alleviate their daughter's condition, Heather's parents have remodeled their home, installed air filters, and made other attempts to limit Heather's exposure to hazardous conditions.

Prior to the imposition of the TRO and preliminary injunction in this case, the City of Mallard allowed open burning of residential waste at any time pursuant to City ordinance 105.05. That ordinance stated, in pertinent part, that

> No person shall allow, cause or permit open burning of combustible materials, except that the following shall be permitted:
>
> 1. Recreational Fires. Open fires for cooking, heating, recreation and ceremonies, provided they comply with the limits for emissions of visible air contaminants established by the State Department of Natural Resources.
>
> 2. Backyard Burning. Backyard burning of residential waste at dwellings of four-family units or less.
>
> 3. Training Fires. Fires set for the purpose of bona fide training of public or industrial employees in fire fighting methods, provided that the Executive Director receives notice in writing at least one week before such action commences.
>
> 4. Variance. Any person wishing to conduct open burning of materials not permitted herein may make application for a variance to the Executive Director.

---

6. Although Heather K.'s papers opposing the motion for summary judgment include a "Statement of Contested Facts" that is indeed "separate, short and concise" as required by N.D.Ia. LR 14(h), the extent to which the statement states disputed facts, rather than conclusions or inferences to be drawn from facts, and the extent to which the statement provides "specific reference to those parts of the pleadings, depositions, answers to interrogatories, admissions, and affidavits which support such contentions" is questionable. See N.D.Ia. LR 14(h).

 The sparseness of the record, however, makes it possible for the court to glean from that record for itself the necessary undisputed and disputed facts, and the basis for such disputes. Although the record has not been properly presented by the parties, the court concludes that the record is adequate for the purposes of this summary judgment motion. Also, because the Clerk of Court accepted the motion although it was not in compliance with local rules, the court itself failed to discover the inadequacies in a more timely fashion so that supplementation could be made, and

because the court believes that justice may best be served by considering the legal arguments of the parties, the court will consider the motion for summary judgment despite an inadequately prepared record.

7. "Bronchial" means "[r]elating to the bronchi," which are "the two subdivisions of the trachea serving to convey air to and from the lungs," while "pulmonary" means "[r]elating to the lungs, to the pulmonary artery, or to the aperture leading from the right ventricle into the pulmonary artery," and, finally, "dysplasia" means "[a]bnormal tissue development." *Stedman's Medical Dictionary* 243, 245, 1464 (26th ed., 1995) (hereinafter, "*Stedman's Medical Dictionary*").

8. "Hemangiomatosis" means "[a] condition in which there are numerous hemangiomas," which are "congenital anomal[ies], in which proliferation of blood vessels leads to a mass that resembles a neoplasm." *Stedman's Medical Dictionary*, at 770.

Further definitions of terms used in this ordinance are set out in the accompanying footnote.[9] The allowance of open burning pursuant to the ordinance meant that Heather was at times subjected to smoke that was hazardous to her life and health.

Prior to resorting to litigation, Heather's parents, upon a number of occasions, endeavored to convince the city council of the City of Mallard to pass a more restrictive open burning ordinance.[10] Those efforts proved fruitless. Heather's parents also filed a complaint with the Equal Opportunity Officer of the Department of the Interior, which has resulted in the City of Mallard conducting a survey of its residents concerning the effects of open burning. The results of the complaint to the Department of the Interior will be discussed in the court's legal analysis.

On May 25, 1995, this court entered a TRO enjoining certain provisions of the City's open-burning ordinance. Among other things, the TRO enjoined entirely subparagraph 2. of City of Mallard Ordinance 105.05, which permitted "backyard burning."[11] The

9. The open burning ordinance, City of Mallard, Iowa, ordinance 105, defines "open burning" as "any burning of combustible materials where the products of combustion are emitted into the open air without passing through a chimney or stack." Ordinance 105.01 ¶ 8. "Residential waste" is defined as "any refuse generated on the premises as a result of residential activities. The term includes landscape wastes grown on the premises or deposited thereon by the elements, but excludes garbage, tires and trade wastes." *Id.* at ¶ 12. The wastes identified in the ordinance are also defined. "Garbage," for the purposes of the ordinance, "means all solid and semisolid, putrescible animal and vegetable wastes resulting from the handling, preparing, cooking, storing, serving and consuming of food or of material intended for use as food, and all offal, excluding useful industrial by-products, and includes all such substances from all public and private establishments and from all residences." *Id.* at ¶ 5. "Landscape waste" under the ordinance means "any vegetable or plant wastes except garbage. The term includes trees, tree trimmings, branches, stumps, brush, weeds, leaves, grass, shrubbery and yard trimmings." *Id.* at ¶ 6. Finally, "refuse" is defined as "putrescible and non-putrescible wastes, including but not limited to garbage, rubbish, ashes, incinerator residues, street cleanings, market and industrial solid wastes and sewage treatment wastes in dry or semi-solid form." *Id.* at ¶ 11. These definitions are in turn drawn from provisions of the Iowa Administrative Code, chapter 567, or from Iowa Code Ch. 455B.

10. Heather's parents have suggested to the city council that open burning be limited to one Saturday per month during the months of April, May, September, October, and November, between the hours of 9:00 a.m. and 5:00 p.m., with one alternate rain day. They seek a total ban on open burning in all other months of the year. Heather's parents' suggestion does contemplate exceptions to the ban for cooking fuels, heating fuels, training fires, burning of disaster rubbish, ceremonial or controlled bonfires, and burning of dangerous materials when alternative means of disposal are unavailable. Their proposal would make violation of such an ordinance a simple misdemeanor punishable by a fine of $50.00, with second offenses fined $100.00. Enforcement would be by the fire chief or the fire chief's designee. *See* Plaintiff's TRO Exhibit C, Plaintiff's TRO Memorandum.

11. The TRO provided, in pertinent part, as follows:

1. Ordinance 105.05, subparagraph 1., which permits "recreational fires" defined as
 [o]pen fires for cooking, heating, recreation and ceremonies, provided they comply with the limits for emissions of visible air contaminants established by the State Department of Natural Resources ...
 is **temporarily restrained and enjoined,** with the exception that recreational fires pursuant to this subparagraph shall be permitted on Sunday, May 28, 1995, and Monday, May 29, 1995, in observance of the National Holiday of Memorial Day. Nothing in this court's order shall be construed as restraining or enjoining the ordinary use of outdoor cooking appliances such as charcoal or gas grills, barbecues, or hibachis, and like outdoor cooking fire receptacles at any time during the effective period of this temporary restraining order.
2. Ordinance 105.05, subparagraph 2., which permits "backyard burning," defined as
 [b]ack yard burning of residential waste at dwellings of four-family units or less ...
 is **temporarily restrained and enjoined** in its entirety for the duration of this temporary restraining order.
3. Ordinance 105.05, subparagraph 3., which permits "training fires," defined as
 [f]ires set for the purpose of bona fide training of public or industrial employees in fire fighting methods, provided that the Executive Director receives notice in writing at least one week before such action commences ...
 is **temporarily restrained and enjoined** only to the extent that the City of Mallard shall provide notice by personal service to plaintiffs herein of the occurrence of any such training fires not less than 24 hours before any such fires are scheduled to commence.
4. Ordinance 105.05, subparagraph 4., which permits any "variance" in the following terms:

preliminary injunction, agreed to by the parties and entered by the court on June 12, 1995, was slightly more liberal in its terms. Specifically, it permitted "backyard burning" "for the period of time of 10:00 a.m. until 6:00 p.m. on the first Saturday of each month hereafter, beginning July 1995." Preliminary Injunction, June 12, 1995.[12] Open burning in the City of Mallard is currently governed by the terms of this preliminary injunction, which remains in force until such time as the merits of this matter are heard by the court.

> Any person wishing to conduct open burning of materials not permitted herein may make application for a variance to the Executive Director ...
> is *temporarily restrained and enjoined* only to the extent that the City of Mallard shall provide notice by personal service to plaintiffs herein of the occurrence of any such variance fires not less than 24 hours before any such fires are scheduled to commence.

See *Heather K.*, 887 F.Supp. at 1268–69.

**12.** The pertinent terms of the agreed preliminary injunction were as follows:

> Pursuant to *Fed.R.Civ.P.* 65(b) and the agreement of the parties, and recognizing that the exceptions to the ban on open burning found in Ordinance 105.05 of the City of Mallard pose a threat of irreparable harm to the life and health of plaintiff Heather K. in violation of Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq.*, the following sections of City of Mallard Ordinance 105.05 are **hereby enjoined** upon the terms stated until such time as the merits of this matter are heard by the court:
> A. Ordinance 105.05, subparagraph 1., which permits "recreational fires," defined as
> [o]pen fires for cooking, heating, recreation and ceremonies, provided they comply with the limits for emissions of visible air contaminants established by the State Department of Natural Resources ...
> is **enjoined**, with the exception that recreational fires pursuant to this subparagraph shall be permitted as follows:
> Open fires for cooking, heating, recreation, and ceremonies, provided they comply with the limits for emission of visible air contaminants established by the State Department of Natural Resources, and so long as they are limited to the City Park and the school grounds as part of a school sponsored event, and are restricted to the hours of 6:00 a.m. to 9:00 a.m. and 5:00 p.m. to 9:00 p.m. Nothing in this court's order shall be construed as restraining or enjoining the ordinary use of outdoor cooking appliances such as charcoal or gas grills, barbecues, or hibachis, and like outdoor cooking fire recepta-

However, the City passed an amended ordinance regulating open burning on September 5, 1995. The City asserts that this amended ordinance constitutes a "reasonable modification" of the ordinance, and thus it has discharged its duties, if any, under Title II of the ADA. The amended ordinance has the following terms:

MALLARD OPEN BURNING ORDINANCE

105.05 OPEN BURNING RESTRICTED. No person shall allow, cause or per-

> cles at any time during the period of this preliminary injunction.
> B. Ordinance 105.05, subparagraph 2., which permits "backyard burning," defined as
> [b]ack yard burning of residential waste at dwellings of four-family units or less ...
> is **enjoined in its entirety** except for the period of time of 10:00 a.m. until 6:00 p.m. on the first Saturday of each month hereafter, beginning July 1995.
> C. Ordinance 105.05, subparagraph 3., which permits "training fires," defined as
> [f]ires set for the purpose of bona fide training of public or industrial employees in fire fighting methods, provided that the Executive Director receives notice in writing at least one week before such action commences ...
> is **enjoined** only to the extent that the City of Mallard shall provide notice to plaintiffs herein and any other persons who have requested such notice in writing of the occurrence of any such training fires not less than 24 hours before any such fires are scheduled to commence.
> D. Ordinance 105.05, subparagraph 4., which permits any "variance" in the following terms:
> Any person wishing to conduct open burning of materials not permitted herein may make application for a variance to the Executive Director ...
> is **enjoined** only to the extent that the City of Mallard shall provide notice by personal service to plaintiffs herein and any other persons who have requested such notice in writing of the occurrence of any such variance fires not less than 24 hours before any such fires are scheduled to commence.
> The City of Mallard shall provide notice of this injunction by posting notice copies of this injunction in such public places as are reasonably calculated to give reasonable notice to the citizens of Mallard, including, but not limited to, the public access television channel providing coverage to Mallard residents, the post office, and a copy included in each resident's water bill.

Preliminary Injunction, June 12, 1995.

mit open burning of combustible materials, except that the following shall be permitted:

(IAC, 567–23.2 [455B])

1. Recreational Fires. Open fires for cooking, heating, recreation and ceremonies, provided they comply with the limits for emission of visible air contaminants established by the State Department of Natural Resources. Campfires and ceremonial fires, including all fires in the City Park, shall be restricted to the hours of 6:00 a.m. to 9:00 a.m. and 5:00 p.m. to 9:00 p.m. Outdoor cooking fires and the use of charcoal, gas or electric grills, barbecues or hibachis, and like outdoor cooking fire receptacles may take place at any time.

2. Back Yard Burning. Back yard burning of residential waste at dwellings may only take place between the hours of 7:00 a.m. and 7:00 p.m. on the following dates:

the 1st and 3rd Saturdays of the months of March, April, May, September, October and November and the 1st Saturday of all other months. Should rain, wind or other weather conditions make burning impractical on the 1st Saturday of any month, the City Clerk may designate the 2nd Saturday as a burn day. Should the alternate date be designated the Clerk shall give notice of the alternate date to all persons who request said notice.

3. Training Fires. Fires set for the purpose of bona fide training of public or industrial employees in fire fighting methods, provided that the Executive Director receives notice in writing at least one week before such action commences.

4. Variance. Any person wishing to conduct open burning of materials not permitted herein may make application for a variance to the Executive Director.

Defendant's Exhibit G., Mallard Open Burning Ordinance, 105.05, as amended September 5, 1995.

## B. Disputed Facts

In her Statement of Contested Facts, Heather K. asserts two genuine issues of material fact should preclude summary judgment:

1. Amending the Code for the City of Mallard so that residents of the city can burn yard waste only eighteen days a year is not a "reasonable modification" within the meaning of Title II of the ADA.

2. The City of Mallard is fully capable of collecting its citizen's [sic] yard waste without either a modification of the existing program or without incurring substantial cost. See deposition of Larry Akridge, City Administrator.

Plaintiff's Statement of Contested Facts.

Heather K. does not identify the basis in the record for the first asserted factual dispute. However, it is readily apparent from the record that a factual dispute as to the reasonableness of the City's modification of its amended ordinance is engendered by the difference between the terms of the amended ordinance and the more restrictive terms of the agreed preliminary injunction. Although no specific portion of Mr. Akridge's deposition is designated as establishing the second purported dispute of fact, a perusal of that deposition indicates that there is a dispute of fact as to whether the City already has available the equipment, personnel, and facilities necessary to collect and dispose of all yard waste without resorting to open burning by citizens. The deposition also reveals a dispute of fact as to the extent to which reliance on that equipment, personnel, and facilities instead of open burning by individuals would affect the costs to the City of Mallard or its citizens of disposing of yard waste.

## IV. LEGAL ANALYSIS

Favorable disposition of the City's motion for summary judgment depends upon the court agreeing to either of two of the City's contentions: either, one, that the City can have no legal liability to Heather K. under Title II of the ADA as a result of its regulation of open burning; or, two, that there is no genuine issue of material fact that the amended ordinance constitutes a "reasonable modification," such that the City has fulfilled

its duties to Heather K. under Title II of the ADA if legal liability can indeed exist under that title of the act for municipal regulation of open burning. The first contention is of some significance, both in this case, and as a general proposition of law, while the second need detain the court only briefly.

### A. Liability Under Title II Of The ADA

"The ADA was enacted to provide a national mandate 'for the elimination of discrimination against individuals with disabilities.'" *Kornblau v. Dade County,* 86 F.3d 193, 194 (11th Cir.1996) (quoting 42 U.S.C. § 12101(b)(1)); *accord Crowder v. Kitagawa,* 81 F.3d 1480, 1483 (9th Cir.1996) (also quoting § 12101(b)(1) for the purpose of the statute). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also Pottgen v. Missouri State High Sch. Activities Ass'n,* 40 F.3d 926, 930 (8th Cir. 1994) ("Title II prohibits discrimination by public entities against individuals with disabilities.").[13]

Title II of the ADA is expressly modeled after § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and adopts its substantive standards. *Pottgen,* 40 F.3d at 930 ("Congress intended Title II to be consistent with section 504 of the Rehabilitation Act," citing, *inter alia,* 42 U.S.C. §§ 12133 and 12134(b)); *accord Urban,* 89 F.3d at 727; *Does 1–5 v. Chandler,* 83 F.3d 1150, 1152 (9th Cir.1996); *Crowder,* 81 F.3d at 1484 (noting further that § 12133 of the ADA specifically provides that "[t]he remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights" applicable to discrimination claims under § 12132 of the ADA). Thus, Title II of the ADA incorpo-

rates the "nondiscrimination principles" of § 504 of the Rehabilitation Act and extends them to state and local government without regard to the receipt by those entities of federal financial assistance. *Does 1–5,* 83 F.3d at 1152; *Helen L. v. DiDario,* 46 F.3d 325, 331 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995); *Easley by Easley v. Snider,* 36 F.3d 297, 300–01 (3d Cir.1994). Unfortunately, there is still very little case law interpreting Title II of the ADA, although cases interpreting the Rehabilitation Act are instructive in interpreting the later statute. *Does 1–5,* 83 F.3d at 1152; *Easley,* 36 F.3d at 300–02.

■ The elements of a Title II claim, modeled on § 505 of the Rehabilitation Act, are as follows: (1) that the plaintiff is, or represents the interests of, a "qualified individual with a disability"; (2) that such individual was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Does 1–5,* 83 F.3d at 1154; *accord Sandison v. Michigan High Sch. Athletic Ass'n, Inc.,* 64 F.3d 1026, 1030–31 (6th Cir.1995); *Doe v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995).

■ The City's first ground for summary judgment goes to the second element of Heather K.'s Title II claim. The City asserts that it is not liable, as a matter of law, under Title II of the ADA for its regulation of open burning, because the City neither burns yard waste itself nor requires citizens to do so, but only regulates such activity conducted by private individuals. Thus, the City contends that open burning is not a program or activity of the City. *See Does 1–5,* 83 F.3d at 1154 (as the second element of a Title II claim, the plaintiff must show that he or she was denied the benefits of some public

---

**13.** Regulations promulgated under the ADA forbid public entities from denying a disabled person "the opportunity to participate in services, programs, or activities that are not separate or different, despite the existence of permissibly separate or different programs or activities." 28 C.F.R. § 35.130(b)(2); *Urban v. Jefferson County Sch. Dist. R–1,* 89 F.3d 720, 727 (10th Cir.1996)

(citing the regulation). They also provide that "[n]o qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.130(a).

entity's services, programs, or activities or was otherwise discriminated against); *accord Sandison,* 64 F.3d at 1030–31; *University of Md. Med. Sys. Corp.,* 50 F.3d at 1265. Heather K. responds that the court need look no further than its TRO ruling to defeat this argument, because the court there held that "the ADA can be used as a vehicle to compel an entity to regulate the conduct of nonparties that is injurious to a disabled person when the means to do so are within the power of that entity." *Heather K.,* 887 F.Supp. at 1262–63. However, the court finds that, although the same ultimate question may have been in view in the TRO decision as is presented here, that is, whether the plaintiff can obtain relief on her ADA claim, that question was approached from a different direction: In the TRO decision, the court's concern was whether it had the power generally, and under the ADA in particular, to order the relief the plaintiff was requesting. The City did not assert in the TRO proceedings that Title II of the ADA simply would not reach its conduct, but asserted instead that the ADA did not provide the relief requested. However, the City has now approached the question of whether Heather K. can obtain relief from what is perhaps a more fundamental direction. It now specifically raises the question, does Title II of the ADA reach the conduct of the City that is alleged to be causing Heather K. harm? The court must now answer this fundamental question.[14]

The City's argument that it is entitled to summary judgment on this ground is founded principally on the results of Heather K.'s complaint to the U.S. Department of the Interior (DOI). In response to Heather K.'s complaint, the Director of the Office for Equal Opportunity of the DOI advised the City as follows:

> We have determined that the open burning practices that were reported to us are neither required, nor prohibited by the City. In consultation with the U.S. Department of Justice, we found that the open burning activities described in the complaint were private actions that were being carried out by local citizens. The private actions of citizens are not covered by the ADA. State and local governments may be subject to the requirements of the ADA if their citizens are required by a State or local government entity to conduct open burnings of leaves or if the open burning activity is one that is carried out directly by a State or local government entity....

Defendant's Exhibit D, Letter of E. Melodee Smith, U.S. Dep't of Interior, to Mayor Keith Cross, City of Mallard.

▮ The response of the DOI is in turn based on a letter to that department's Office of the Solicitor from the U.S. Department of Justice (DOJ) considering whether the City of Moline, Illinois, has violated Title II of the ADA by allowing leaf-burning by its citizens. Defendant's Exhibit E, Letter of Deval L. Patrick, Assistant Attorney General, Civil Rights Division, to John D. Leshy, Solicitor, U.S. Dep't of Interior, p. 1. The letter from the DOJ first recognizes that the DOI had determined that the practice of leaf-burning may adversely affect people with asthma and other respiratory disabilities, and the DOJ did not take issue with that conclusion. *Id.* However, the letter from the DOJ then rejects three arguments offered by the DOI that Moline's failure to modify the practice of leaf-burning violated Title II of the ADA: "(1) that leaf-burning is a program of the City under 28 C.F.R. § 35.130(a); (2) that leaf-burning is part of an 'arrangement' between the City and its citizens under 28 C.F.R. § 35.130(b)(3)(i); and (3) that leaf-burning is a barrier to access by people with disabilities to other programs of the City in

---

14. Heather K. poses three questions in her resistance to summary judgment on this issue: (1) Is the City of Mallard regulating the open-burning of yard waste? (2) Does the City of Mallard have the power to regulate the actions of their citizens so that citizen action is not injurious to disabled individuals? and (3) Does the exercise of authority by the City of Mallard allow this court to provide injunctive relief? Heather K. asserts that the answer to each of these questions is "yes"; therefore, she asserts that she is entitled to seek the relief requested under the ADA. However, although the answers to these questions may be in some respects illuminating, they do not directly address the question posed by the City, which is whether the ADA reaches the conduct of the City.

violation of 28 C.F.R. § 35.149." Defendant's Exhibit E, p. 1. The conclusions of the DOJ were as follows:

... We believe that argument two, above, does not apply to the current situation. The letter does not indicate any formal or informal agreement or arrangement between the City and its citizens under which the citizens have agreed to provide a leaf-burning service for the City. While an arrangement need not necessarily be evidenced by a formal agreement or similar documentation in order to be governed by 28 C.F.R. § 35.130(b)(3)(i), a mere incidental benefit to a public entity is not sufficient to indicate such an arrangement.

Similarly, argument three is too broad. Such an argument would potentially extend the City's program access obligations. to any barriers found along the path from a City resident's home to a municipal program, regardless of whether those barriers were created by the City or were within its control. Section 35.149 of the title II regulation, which is limited to the "public entity's facilities," was not intended to go that far.

Finally, the first argument, that leaf-burning is a program of the City under 28 C.F.R. § 35.130(a), while possibly appropriate in some circumstances, does not appear applicable here. The ADA was intended to eliminate discrimination by public entities in their programs, services, and activities. The leaf-burning activities described in the draft letter of findings, however, are not conducted by or on behalf of a public entity, but rather constitute purely private activity on the part of the City residents. As such, those activities are not subject to title II of the ADA.

If, on the other hand, a public entity requires leaf-burning by its citizens or contracts with its citizens to provide leaf-burning services for the public entity, then leaf-burning may constitute a program of the public entity under title II. Merely allowing leaf-burning, though, generally would not transform leaf-burning into a public program.

Therefore, in reviewing pending and future complaints regarding leaf-burning, we would recommend that the Department of the Interior assess whether the leaf-burning is done by or on behalf of the public entity or is required by the public entity. If it is, the public entity would be required to make reasonable modifications to the leaf-burning program, such as providing advance notice of dates and locations of leaf-burning. If it is not, the leaf-burning activity, itself, will most likely not be covered by title II.

Defendant's Exhibit E, pp. 1–2. The court finds that there are two alternative analytical fallacies in the DOJ's determination of the limited extent to which Title II of the ADA can reach municipal regulation of open burning.[15]

The first such fallacy was recognized by the Ninth Circuit Court of Appeals in *Crowder*, 81 F.3d at 1483–85. In *Crowder*, the district court concluded that a public health measure of the State of Hawaii, designed to prevent the spread of rabies among animals by quarantining them upon import into the island, was not a service or benefit furnished by the state to eligible participants, and thus could not run afoul of Title II of the ADA. *Crowder*, 81 F.3d at 1483. The court of appeals rejected this conclusion:

The flaw in [the district court's] analysis is the assumption that no violation of the

---

**15.** The court is not unmindful that Title II directed the DOJ to promulgate regulations for its implementation, and that such regulations are entitled to substantial deference, and therefore must be given controlling weight unless "arbitrary, capricious or manifestly contrary to the statute." *See, e.g., Helen L.*, 46 F.3d at 331 (citing *Blum v. Bacon*, 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982), and *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984)). However, no

party has asserted that the advisory letter from the DOJ is such a regulation for implementation of the ADA, or that the advisory letter is entitled to similar deference. Furthermore, even if controlling weight should be given to the interpretation of the meaning of the regulations found in the DOJ advisory letter, the court concludes that the interpretation advanced in Defendant's Exhibit E is "manifestly contrary to the statute," *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782, as shall be explained in the body of this opinion.

ADA occurs unless a service or benefit of the state is provided in a manner that discriminates against disabled individuals. This simply is not so.

Section 12132 of the ADA precludes (1) exclusion from/denial of benefits of public services, as well as (2) discrimination by a public entity. Due to the insertion of "or" between exclusion from/denial of benefits on the one hand and discrimination by a public entity on the other, we conclude that Congress intended to prohibit two different phenomena. Congress intended to prohibit outright discrimination, as well as those forms of discrimination which deny disabled persons public services disproportionately due to their disability.

*Crowder,* 81 F.3d at 1484. After recognizing the relationship between Title II of the ADA and the Rehabilitation Act, the Ninth Circuit Court of Appeals considered the Supreme Court's interpretation of the Rehabilitation Act in *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985):

In *Choate,* the Court concluded that Congress intended to protect disabled persons from discrimination arising out of both discriminatory animus and "thoughtlessness," "indifference," or "benign neglect." [*Choate,* 469 U.S.] at 295, 105 S.Ct. at 717. The Court held, however, that judicial review over each and every instance of disparate impact discrimination would be overly burdensome. Rather than attempt to classify a type of discrimination as either "deliberate" or "disparate impact," the Court determined it more useful to assess whether disabled persons were denied "meaningful access" to state-provided services. *Id.* at 302, 105 S.Ct. at 720–21; *see also Helen L. v. DiDario,* 46 F.3d 325, 335 (3d Cir.), *cert. denied by Pennsylvania Secretary of Public Welfare v. Idell S.,* —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995) ("Congress could not have intended to limit the [ADA's] protections and prohibitions to circumstances involving deliberate discrimination.... Rather, the ADA attempts to

eliminate the effects of ... benign neglect, apathy, and indifference.") (internal quotations omitted).

Although Hawaii's quarantine requirement applies equally to all persons entering the state with a dog, its enforcement burdens visually-impaired persons in a manner different and greater than it burdens others. Because of the unique dependence upon guide dogs among many of the visually-impaired, Hawaii's quarantine effectively denies these persons—the plaintiffs in this case—meaningful access to state services, programs, and activities while such services, programs, and activities remain open and easily accessible by others. The quarantine, therefore, discriminates against the plaintiffs by reason of their disability.

[The quarantine restrictions] effectively preclude[ ] visually-impaired persons from using a variety of public services, such as public transportation, public parks, government buildings and facilities, and tourist attractions, where humans or animals are inevitably present....

*We conclude that Hawaii's quarantine requirement is a policy, practice or procedure which discriminates against visually-impaired individuals by denying them meaningful access to state services, programs and activities by reason of their disability in violation of the ADA.*

*Crowder,* 81 F.3d at 1484–85 (emphasis added; footnote omitted). Thus, the Ninth Circuit Court of Appeals held that the quarantine regulations fell within the scope of Title II of the ADA, because they had a discriminatory effect upon the availability of state services, programs, or facilities to disabled persons.[16]

In this case, as a matter of law, Title II will reach the City's regulation of open burning *if* the City's ordinance has a discriminatory effect on the ability of persons with disabilities to take advantage of City services, programs, or facilities. *Id.* There is,

---

16. Having found discriminatory effect of a regulation brought that regulation within the scope of Title II of the ADA, the court then turned to the question of whether amendments to the quarantine regulations constituted "reasonable modifi-

cations" of those regulations, and, as this court observed in the preceding section, found the reasonableness of the modifications to be a fact question not amenable to summary judgment. *Crowder,* 81 F.3d at 1485.

at a minimum, a genuine issue of material fact as to whether permitting open burning has an adverse effect on disabled persons, like Heather K., who have respiratory problems aggravated by particulates resulting from such burning. Furthermore, there is at least a genuine issue of material fact as to the extent to which permitting open burning precludes such disabled individuals from enjoying access to City services, programs, or facilities. *Id.* The record gives rise to reasonable inferences that, because of permitted open burning, Heather K. is unable to use the City's public parks, occupy or travel on public streets or occupy public buildings with open windows or inadequate climate control, attend public activities or functions held outside, play in her own backyard, take walks, or simply be outside if there is any likelihood of open burning taking place. *Cf. id.* (finding that state regulations effectively precluded visually-impaired persons from using a variety of public services, such as public transportation, public parks, government buildings and facilities, and tourist attractions). In light of the decision of the Ninth Circuit Court of Appeals in *Crowder*, therefore, summary judgment must be denied to the City on its assertion that it cannot be liable under Title II of the ADA as a matter of law.

 In the alternative, this court recognizes a second fallacy in the DOJ's analysis that also undermines the City's entitlement to summary judgment on Heather K.'s claims. That fallacy is that "leaf-burning" isn't the program, service, activity, or benefit provided by the City; *regulation* of "leaf-burning" or other open burning is the program, service, activity, or benefit provided by the City, and hence that *regulation* of "leaf-burning" or other open burning must comply with Title II of the ADA and regulations promulgated thereunder. Section 35.130(a) of the regulations promulgated under Title II of the ADA provides that "[n]o qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.130(a). Nowhere do the regulations define "services," "programs," "activities," or "benefits" of the pub-

lic entity. Plainly, however, one service, program, activity, or benefit of a city is that it may

> exercise any power and perform any function that it deems appropriate to protect and preserve the rights, privileges, and property of the city or of its residents, and to preserve and improve the peace, safety, health, welfare, comfort, and convenience of its residents.

Iowa Code § 364.1. The City's open-burning ordinance was promulgated pursuant to this power, and the benefits of the ordinance are those envisioned by the statute. Thus, in the alternative, as a matter of law, the City's regulation of open burning is a program, service, activity, or benefit for and on behalf of its citizens that is within the scope of Title II of the ADA. Again, there are genuine issues of material fact as to whether disabled persons like Heather K. are denied the benefits of this service, program, or activity of the City or subjected to discrimination by that program, service, or activity. 28 C.F.R. § 35.130(a). First, there are genuine issues of material fact as to whether Heather K. can enjoy the anticipated benefits of the regulation of open burning, because, with her disability, regulations permitting open burning do not improve her peace, safety, health, welfare, comfort, or convenience. Iowa Code § 364.1 (authorizing the exercise of public powers and identifying these benefits to be gained from the exercise of such powers). Second, the regulation of open burning discriminates against persons who have disabilities like Heather K.'s, because the open burning permitted has a disparately greater negative impact upon such persons. On this alternative ground, that the regulation of open burning is itself a program, service, activity, or benefit provided by the City, the City's motion for summary judgment on its lack of legal liability under Title II of the ADA should also be denied.

### B. "Reasonable modification"

 Assuming that the elements of a Title II cause of action can be shown in a particular case, and assuming that they have or can be shown in Heather K.'s case, when a public entity's policies, practices, or procedures dis-

criminate against the disabled in violation of the ADA, a public entity is required to make "reasonable modifications." *Crowder,* 81 F.3d at 1485. The regulations promulgated pursuant to the ADA require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *Urban,* 89 F.3d at 727 (citing the regulation); *Easley,* 36 F.3d at 304 (also quoting the regulation). The Sixth Circuit Court of Appeals has commented that "the word 'modification' 'connotes moderate change,' *MCI Telecommunications Corp. v. AT & T Co.,* 512 U.S. 218, ——, 114 S.Ct. 2223, 2230, 129 L.Ed.2d 182 (1994), and nothing in the context or structure of title II [of the ADA] suggests otherwise." *Sandison,* 64 F.3d at 1037. Thus, as the regulations specifically state, a modification that would "fundamentally" alter or change a program or policy is not a "reasonable modification." *Id.* (finding that imposing "[t]he daunting task of determining whether an older student possesses an unfair competitive advantage [in high school athletics] is not a "reasonable modification[ ]," just as the task is not a "reasonable accommodation.").

The Ninth Circuit Court of Appeals recently discussed the court's obligations when confronted with a "reasonable modification" issue in an ADA case:

> The court's obligation under the ADA and accompanying regulations is to ensure that the decision reached by the state authority is appropriate *under the law and in light of proposed alternatives.* Otherwise, any state could adopt requirements imposing unreasonable obstacles to the disabled, and when haled into court could evade the antidiscrimination mandate of the ADA merely by explaining that the state authority considered possible modifications and rejected them.

*Crowder,* 81 F.3d at 1485 (emphasis added). The Ninth Circuit Court of Appeals in *Crowder* found that the reasonableness of the plaintiff's proposed alternative modifications

could not be determined as a matter of law on the record before the court. *Id.* Indeed, the court appeared to doubt that the reasonableness of proposed modifications could be anything but a fact question:

> Once again turning to the Rehabilitation Act, we have held that the determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry. *Chalk v. United States District Court,* 840 F.2d 701, 705 (9th Cir. 1988). Moreover, inquiry into reasonable modification would necessitate findings of fact regarding the nature of the [harm in question], the extent of the risk posed [by that harm], and the probability that [the harm would spread if not regulated].

*Crowder,* 81 F.3d at 1486–87 (considering reasonable modifications to a rabies quarantine regulation on animals brought into Hawaii in light of the regulation's discriminatory effect on visually-impaired persons in need of guide dogs). The appellate court therefore reversed the district court's grant of summary judgment in favor of the state. *Id.* at 1487.

Similarly, the Second Circuit Court of Appeals has said,

> Although neither the ADA nor the courts have defined the precise contours of the test for reasonableness, it is clear that *the determination of whether a particular modification is "reasonable" involves a fact-specific, case-by-case inquiry that considers among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it.*

*Staron v. McDonald's Corp.,* 51 F.3d 353, 356 (2d Cir.1995) (considering "reasonable modification" in a Title III case under the ADA; emphasis added, citations omitted). The test of what is a "reasonable modification" employed by the Third Circuit Court of Appeals is also similar, and is also a fact-intensive one:

> The test to determine the reasonableness of a modification is whether it alters the essential nature of the program or imposes an undue burden or hardship in light of the overall program. *School Bd. of Nassau*

*County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987); *Alexander v. Choate*, 469 U.S. 287, 300, 105 S.Ct. 712, 719–20, 83 L.Ed.2d 661 (1985); *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1384–86 (3d Cir.1991).

*Easley*, 36 F.3d at 305. In applying this test, the Third Circuit Court of Appeals in *Easley* made factual determinations of the extent to which the proposed modification would change the focus of the program, shifting that focus from provision of attendant care and its societal objective for the physically disabled to personal care services to persons often served by other state programs, and the extent to which the proposed modification would impose possibly impossible burdens on the state entity. *Id.*

■ The court finds that the reasonableness of proposed modifications is generally a fact question not amenable to summary determination. *See Crowder*, 81 F.3d at 1485–87 (finding the question of reasonableness of modifications a fact-intensive one not appropriate for determination on summary judgment); *Staron*, 51 F.3d at 356 (reasonableness of a modification was a fact-intensive question); *Easley*, 36 F.3d at 305 (same). Furthermore, a genuine issue of material fact as to the reasonableness of any proposed modification in this case is apparent from the record simply in the presence of the alternatives posed by the City's amended ordinance, modifications proposed by the plaintiff, and the modification found in the agreed preliminary injunction. *Crowder*, 81 F.3d at 1485 (reasonableness of a modification is judged "under the law and in light of proposed alternatives"). Only a fully developed record will allow the court to determine whether any of these proposed modifications is "effective[ ] ... in light of the nature of the disability in question and the cost to the organization that would implement it," *Staron*, 51 F.3d at 356, or the extent to which it alters the objectives

of the ordinance or imposes undue hardships upon the City. *Easley*, 36 F.3d at 305. The plaintiff has generated a genuine issue of material fact as to this last consideration, the cost to the City, in putting forward the deposition testimony of Mr. Akridge concerning the availability of equipment, personnel, and facilities necessary to collect and dispose of all yard waste without resorting to open burning by citizens, and the costs or difficulties imposed by eliminating open burning as an alternative. Thus, there are genuine issues of material fact on the reasonableness of any proposed modification, in every respect,[17] precluding summary judgment in the City's favor on the ground that the amended ordinance is a reasonable modification as a matter of law.

## V. CONCLUSION

The City's motion for summary judgment came down to two alternatives: Either the City could not be held legally liable under Title II of the ADA for its regulation of open burning, or it had fulfilled its duty, if any, under Title II of the ADA to provide a reasonable modification of its open-burning ordinance. The court rejects both of these propositions as a ground for summary judgment here. First, the court finds that the City's regulation of open burning is subject to Title II of the ADA on either of two alternative grounds. The first of these alternatives is that, as a matter of law, Title II will reach the City's regulation of open burning *if* the City's ordinance has a discriminatory effect on the ability of persons with disabilities to take advantage of City services, programs, or facilities, and there are genuine issues of material fact as to whether there is such a discriminatory effect. The second of these alternatives is that open burning is not itself a program of the City, but the *regulation* of open burning is a program, service, activity, or benefit of the City. Pursuant to

---

17. In her brief, Heather K. asserts that the amended ordinance presents an "unconscionable" alternative, because of the number of days and alternative days on which open burning might force her from her home. Although any factual dispute as to the effect of any proposed alternative upon Heather K. herself and the actions she would have to take in response has not

been properly presented here in a statement of contested facts, the record itself in this case makes abundantly clear that the effect of open burning upon Heather K. and the extent to which any degree of open burning will impose hardships upon her to avoid physical consequences are fact issues to be developed at a trial on the merits.

regulations promulgated under the ADA, such a service, program, activity, or benefit may not be denied to persons on the basis of disability or discriminate against such persons. There are again genuine issues of material fact as to whether persons like Heather K. are denied the service, activity, or benefit of the City's open-burning ordinance or discriminated against by that ordinance.

Second, whether or not the amended ordinance asserted by the City is a reasonable modification of its prior ordinance is generally a question of fact not amenable to summary disposition. In this case, the court finds that genuine issues of material fact as to the reasonableness of the City's proffered modification are apparent in light of the law, the alternative modifications posed by the agreed preliminary injunction and the plaintiff's suggestions, the effect of the proffered modifications upon Heather K. and persons with similar disabilities, and the costs or impact upon the City of this and other alternatives.

Therefore, the City's motion for summary judgment is **denied** in its entirety. This ruling has further attempted to clarify the issues remaining for trial, currently scheduled before the court on January 6, 1997.

**IT IS SO ORDERED.**